UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                                                          Case No. 09-46326-CEC

ISACK ROSENBERG,                                                   Chapter 11

                                        Debtor.
-----------------------------------------------------------x

## DECISION

Appearances:

| | |
|---|---|
| Leo Fox | Joseph C. Savino |
| 630 Third Avenue | Lazer, Aptheker, Rosella & Yedid, P.C. |
| 18th Floor | 225 Old Country Road |
| New York, NY 10017 | Melville, NY 11747 |
| Attorney for Debtor | Attorneys for Capital One, N.A. |
| | |
| Robert J.E. Edwards | William Curtin |
| Polsinelli Shughart PC | Office of the United States Trustee |
| 7 Penn Plaza | 271 Cadman Plaza East |
| Suite 600 | Suite 4529 |
| New York, NY 10001 | Brooklyn, NY 11201 |
| Attorneys for RCG Longview II, L.P., | |
| RCGLV Maspeth LLC and Galster | Wayne M. Greenwald |
| Funding, L.L.C. | 475 Park Avenue South - 26th Floor |
| | New York, NY 10016 |
| | Attorney for Abraham Rosenberg |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the application of Isack Rosenberg, Debtor-in-Possession (the "Debtor") for approval of a settlement with Capital One, N.A. pursuant to Bankruptcy Rule 9019.   For the reasons set forth below, this settlement is approved.

## Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(A) and (O), and the Eastern District of New York standing order of reference dated August 28, 1986.   This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Background

The following relevant facts are not in dispute.

The Debtor, an individual, commenced this chapter 11 case on July 28, 2009.   The Debtor's assets consist primarily of ownership interests in a number of businesses, including Certified Lumber Corporation and Boro Park Home Center, lumber and hardware businesses, as well as other entities engaged in the development of real estate.   One such entity is McCaren Park Mews, LLC ("McCaren"), of which the Debtor owns 50%.   McCaren owns an unfinished condominium project in Williamsburg, Brooklyn (the "McCaren Project").   Capital One, N.A. ("Capital One") holds a mortgage and security interest on McCaren's assets, securing debt in the approximate amount of $50 million (the "McCaren Debt").   The Debtor and Yitzchok Schwartz, the owner of the other half of the equity interest in McCaren, each have guaranteed the McCaren Debt.

Other creditors of the Debtor include RCGLV Maspeth LLC, RCG Longview II, L.P., and Galster Funding, LLC (collectively, "RCG"), which individually or collectively hold a security interest in the Debtor's ownership interest in various entities, including McCaren.

Prior to the filing of this chapter 11 case, Capital One commenced an action in state court to foreclose its mortgage on McCaren's assets and to recover on the guarantees. This action was removed by the Debtor to the District Court, and subsequently referred to this Court on September 3, 2009. In the adversary proceeding, the Debtor and McCaren asserted counterclaims against Capital One, including a claim that Capital One had agreed to grant the Debtor a right of first refusal to match a bona fide offer of any prospective purchaser in the event Capital One should offer to sell the McCaren Debt to a third party. Capital One stated at the hearing on this motion that it has been actively seeking to sell the McCaren Debt and has received at least one offer. The Debtor also sought injunctive relief and sought to hold Capital One in contempt for violating the automatic stay by refusing to honor this alleged right of first refusal, as well as damages for Capital One's failure to fund the completion of the McCaren Project.

On August 27, 2009, RCG filed a motion to appoint an examiner or, in the alternative, for conversion or dismissal of the Debtor's bankruptcy case. Thereafter, on November 5, 2009, after the withdrawal of the Debtor's objections, the Court ordered the appointment of an examiner.

On September 11, 2009, Capital One filed a motion seeking the appointment of a chapter 11 trustee in this case. A trial was scheduled on all of the issues raised by Capital One's motion for the appointment of a chapter 11 trustee and the Debtor's and McCaren's motions for contempt, for injunctive relief, and to enforce the Debtor's claimed right of first refusal.

4

The Settlement

A few days prior to the scheduled trial, the Debtor, McCaren and Capital One reported to the Court that they had settled the issues raised by Capital One's motion and the adversary proceeding, and shortly thereafter the Debtor filed a motion for approval of the settlement pursuant to Bankruptcy Rule 9019. The settlement agreement dated as of October 22, 2009 ("Settlement Agreement"), signed by McCaren, the Debtor and Mr. Schwartz, as well as Capital One, provides that the Debtor has the right to arrange for a third party to purchase the McCaren Debt, at a discount, no later than December 21, 2009.[1] If this right is not exercised, the Settlement Agreement provides that Capital One shall have the right thereafter to sell the McCaren Debt without interference. In the event that the right is not timely exercised, and in the event that the Debtor does not obtain a temporary certificate of occupancy for the McCaren Project by December 21, 2009, the Debtor consents to the appointment of a chapter 11 trustee limited to the operation and disposition of the real property owned by McCaren. At the hearing on this motion, the parties agreed that this would be effectuated by filing a bankruptcy petition for McCaren, and causing McCaren to consent to the appointment of a chapter 11 trustee. The Debtor and McCaren do not release their counterclaims against Capital One unless the right to purchase the McCaren Debt is successfully exercised.

---

[1] The amount of the discount has been disclosed to the Court, and to RCG, and will be disclosed to any party in interest who agrees to keep the information confidential, but has been redacted from the electronically filed copy of the Settlement Agreement at Capital One's request pursuant to § 107(b) of the Bankruptcy Code.

## Legal Standard for Approval of Settlements

A bankruptcy court may approve a compromise and settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 if it "is fair, reasonable and adequately based on the facts and circumstances before the court."  In re Hibbard Brown & Co., 217 B.R. 41, 45 (Bankr. S.D.N.Y. 1998).  "As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged," In re Adelphia Commc'ns Corp., 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007), "because they minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate"  Inv. Exch. Group, LLC v. Colo. Capital Bank (In re 1031 Tax Group, LLC), Case No. 07-11448, Adv. Pro. No. 07-1710, 2007 WL 2455176, at *3 (Bankr. S.D.N.Y. August 23, 2007).

In determining whether a proposed settlement should be approved, a court must determine whether the settlement is in the best interests of the estate and whether it is "fair and equitable." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).  The court's responsibility is to "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)).

The court may give weight to the opinion of the debtor in possession, the parties, and their attorneys that the settlement is fair and equitable.  See In re Stone Barn Manhattan LLC, 405 B.R. 68, 75 (Bankr. S.D.N.Y. 2009); Adelphia, 368 B.R. at 226 ("[T]he court is permitted to rely upon 'opinions of the trustee, the parties, and their attorneys.'" (quoting Official Comm. of Unsecured Creditors of Int'l Distribution Ctrs., Inc. v. James Talcott, Inc. (In re Int'l Distribution Ctrs., Inc.),

103 B.R. 420, 423 (S.D.N.Y. 1989))).   See also Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 174 n. 10 (2d Cir. 2005) (noting that § 1107 allows the term "debtor in possession" to be substituted for "trustee" when applying the Bankruptcy Code and the Bankruptcy Rules).

It is not necessary for the bankruptcy court to rule on disputed issues of fact and law or to conduct a "mini trial" on the merits of the underlying litigation.   Adelphia, 368 B.R. at 225; In re Ashford Hotels, Ltd., 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998); In re Purofied Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993).   At the same time, a court may not simply defer to a debtor in possession's judgment, but must independently evaluate the reasonableness of the settlement.   See TMT Trailer Ferry, 390 U.S. at 424; Kayo v. Fitzgerald, 91 Fed. Appx. 714, 716 (2d Cir. 2004); Ashford Hotels, 226 B.R. at 803; Purofied Down Prods., 150 B.R. at 523.

The Second Circuit summarized the factors that a court must consider when deciding whether a settlement falls above or below the lowest point in the range of reasonableness as follows:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
>
> (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";
>
> (4) whether other parties in interest support the settlement;

>(5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;
>
>(6) "the nature and breadth of releases to be obtained by officers and directors"; and
>
>(7) "the extent to which the settlement is the product of arm's length bargaining."

Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007) (alteration in original) (quoting In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

### The Objections

RCG argues that the Settlement Agreement constitutes an impermissible attempt to obtain approval of any financial or other transaction which the Debtor or its affiliates might enter into in order to exercise the right to acquire the McCaren Debt, without compliance with the requirements of §§ 363 and 364 of the Bankruptcy Code. RCG also argues that insufficient information is provided to permit the Court to assess the likelihood that the Debtor and McCaren will be able to exercise the right to arrange for the discounted purchase of the McCaren Debt by a third party, and that without such information, it is not possible to assess the benefits of the Settlement Agreement so as to determine whether it falls above the "lowest point in the range of reasonableness." W.T. Grant Co., 699 F.2d at 608. In other words, RCG argues, absent an evaluation of the likelihood that Capital One will be taken out under the Settlement Agreement, with the resulting reduction in the secured debt on the McCaren Project, it is impossible to determine whether the detriment to the estate outweighs any potential benefit of the Settlement Agreement.

The Debtor and Capital One have addressed the first objection by stipulating on the record that a separate motion will be made for approval of any financing or other transaction that the Debtor or any of the entities in which he has an interest proposes to enter into an order to exercise the right under the Settlement Agreement. Based on that stipulation, the objection that the Settlement Agreement is an impermissible circumvention of §§ 363 and 364 is overruled.

As to the second objection, RCG does not dispute that the estate will be benefitted by the Settlement Agreement if the right to acquire the McCaren Debt is exercised, because the Debtors' obligation on the McCaren Debt will be significantly reduced. However, RCG argues, insufficient information is provided about the likelihood that the right granted under the Settlement Agreement will be exercised, so that it is impossible to determine whether this potential benefit outweighs the detriment to the estate resulting from the Settlement Agreement. This objection falls under the first three Iridium factors.

The Debtor declined to offer any testimony by the Debtor concerning how he, Schwartz and McCaren plan to take advantage of the opportunity presented by the Settlement Agreement. Nevertheless, the Debtor argues, a sufficient showing has been made that the settlement satisfies the applicable standard for approval. This is so, the Debtor argues, because the Debtor, under the Settlement Agreement, is obtaining, in effect, the very same right of first refusal sought in the pending litigation with Capital One, and giving up very little in return.

Although the right to arrange for the purchase of the McCaren Debt granted under the Settlement Agreement is limited in duration (it must be exercised by December 21, 2009) this is consistent with the nature of a right of first refusal. "[A] right of first refusal is a 'restriction on the power of one party to sell without first making an offer of purchase to the other party upon the

happening of a contingency.'" Space Imaging Europe, Ltd. v. Space Imaging L.P., 38 F. Supp.2d 326, 333 (S.D.N.Y. 1999) (quoting LIN Broad. Corp. v. Metromedia, Inc., 544 N.Y.S.2d 316, 319 (N.Y. 1989)). This right "'bind[s] the party who desires to sell not to sell without first giving the other party the opportunity to purchase the property at the price specified.'" Id. (quoting LIN Broad., 544 N.Y.S.2d at 319). A party wishing to exercise a right of first refusal must be prepared to close in the same time frame as the competing offeror. See Sel-Leb Mktg., Inc. v. Dial Corp., No. 01 CIV 9250, 2002 WL 1974056, at *5 (S.D.N.Y. Aug. 27, 2002) (holder of the right of first refusal must seek to purchase the property on the same terms as the third party's offer).

Capital One has stated that it has a buyer who is ready, willing and able to purchase the McCaren Debt, and this is not disputed by RCG. Generally, the owner's acceptance of a third party's offer "triggers the right of first refusal and compels the right of first refusal holder to decide whether it desires to enter into a contract of sale with the owner on the same terms the owner is willing to accept from the third party." Id. (citing 3 Corbin on Contracts § 11.3, at 470 (rev. ed. 1996)). Given this fact, the time frame provided under the Settlement Agreement is not substantially different than the time within which the Debtor would be required to close on the transaction if this Court had granted, or Capital One conceded, the right of first refusal which the Debtor and McCaren seek to enforce in their counterclaims against Capital One. As such, the first Iridium factor, examining the balance between the litigation's possibility of success against the settlement's benefits, weighs in favor of approval of the Settlement Agreement because it provides the Debtor, and the estate, with the same result as if the Debtor successfully litigated the counterclaim that the Debtor and McCaren are entitled to a right of first refusal.

The principal concession being made by the Debtor under the Settlement Agreement is the consent to the appointment of a trustee for McCaren in the event the option to acquire the McCaren Debt is not successfully exercised. This aspect of the Settlement Agreement invokes the second and third Iridium factors, which examine the likelihood of the litigation's success compared to the benefits of the Settlement Agreement, and the interests of the Debtor's creditors. Separate and apart from any potential benefit to the estate arising from the exercise of the right to acquire the McCaren Debt at a discount, Capital One's settlement of its motion for the appointment of a chapter 11 trustee represents a significant benefit, in that the estate avoids the substantial litigation costs and delay that would be involved in litigating the motion, pursuant to which Capital One seeks a chapter 11 trustee, not just for McCaren, but for the Debtor. This Court notes that Capital One's motion was heavily contested, involved many discovery disputes and pretrial conferences, and an evidentiary hearing on the issues would have possibly involved the presentation of 26 witnesses. (See Transcript of conference held on Oct. 7, 2009 at 16.) On the other hand, the appointment of a trustee for McCaren does not necessarily represent a detriment to the estate. It is undisputed that there is little, if any, equity in the McCaren Project. Furthermore, the appointment of a trustee for McCaren would not prevent the Debtor or the Debtor's creditors from seeking to reorganize McCaren, either in cooperation with the trustee or by filing a separate plan for McCaren.

This Court also rejects RCG's argument that the benefit of the Settlement Agreement may be outweighed by the detriment that will be suffered by the estate from the Debtor's the waiver of the remaining counterclaims against Capital One. If the right under the Settlement Agreement is exercised, the resulting immediate reduction of the McCaren Debt, for which the estate is fully

liable, will benefit the estate more than its share in any potential recovery on the counterclaims against Capital One, with attendant uncertainty, delay and litigation costs.   Furthermore, the Settlement Agreement specifically provides that the counterclaims against Capital One are waived only in the event the Debtor successfully exercises the right of first refusal.   Therefore, if the Debtor is unsuccessful in obtaining a purchaser for the McCaren Debt, the estate's interest in any recovery from the counterclaims, and in the 50% ownership of McCaren, is preserved.   Therefore, the second and third Iridium factors also weigh in favor of approval of the Settlement Agreement.

Thus, even if no conclusion can be drawn about the likelihood that the right to acquire the McCaren Debt granted under the Settlement Agreement will be exercised, the other benefits conferred by the Settlement Agreement are sufficient to justify its approval under Bankruptcy Rule 9019.   In sum, the Settlement Agreement provides the Debtor with the principal relief sought in the adversary proceeding, preserves the counterclaim against Capital One in the event the Debtor is unsuccessful in exercising the right to acquire the McCaren Debt granted under the Settlement Agreement, and, even if a trustee is appointed for McCaren, does not forfeit the estate's interest McCaren or the ability to propose a plan of reorganization for McCaren.   Therefore, this Court concludes that the Settlement Agreement does not "fall below the lowest point in the range of reasonableness."   W.T. Grant, 699 F.2d at 608.


## Conclusion

For the foregoing reasons, the Settlement Agreement is approved.  A separate order is being entered herewith.



**Dated: Brooklyn, New York**
**November 18, 2009**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**