UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                                              Case No.  09-46326-CEC

    Isack Rosenberg,                                                     Chapter 11

                            Debtor.
------------------------------------------------------------x

## DECISION

Appearances:

| | |
|---|---|
| Leo Fox, Esq. | George R. Hirsch, Esq. |
| 630 Third Avenue | Sills Cummis & Gross P.C. |
| New York, NY 10017 | One Rockefeller Plaza |
| Attorney for the Debtor | New York, New York 10120 |
| | Attorneys for 32nd Street Investors III, LLP |
| Dan Flanigan, Esq. | |
| Polsinelli Shughart PC | Wayne M. Greenwald, Esq. |
| 7 Penn Plaza, Suite 600 | 475 Park Avenue South - 26th Floor |
| New York, NY 10001 | New York, NY 10016 |
| Attorneys for RCG Longview II, L.P., | Attorney for Abraham Rosenberg |
| RCGLV Maspeth LLC and Galster | |
| Funding, L.L.C. | Robin Abramowitz, Esq. |
| | Jennifer L. Silvestro, Esq. |
| William Curtin, Esq. | Lazer, Aptheker, Rosella & Yedid, P.C. |
| Office of the United States Trustee | Melville Law Center |
| 271 Cadman Plaza East, Suite 4529 | 225 Old Country Road |
| Brooklyn, NY 11201 | Melville, NY 11747 |
| | Attorneys for Capital One, N.A |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motion (the "Motion") of Isack Rosenberg ("the Debtor") to enter into a stipulation (the "Proposed Stipulation") with Capital One, N.A. ("Capital One"), extending the deadline for the closing of a transaction in with the debt owed to Capital One would be purchased at a discount, as set forth in a previously approved stipulation between those parties. The Motion was opposed by Galster Funding, L.L.C., RCG Longview II, L.P., RCGLV Maspeth, LLC, (collectively, "RCG"). Capital One also objects to the approval of the Proposed Stipulation, arguing that the original stipulation expired by its terms and that the manner in which the Debtor seeks to pay the discount amount to Capital One does not comply with the terms of either stipulation. For the following reasons, the Motion is denied and the Proposed Stipulation is disapproved.

## Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(A) and (O), and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Background

The following relevant facts are not in dispute.

The Debtor, an individual, commenced this chapter 11 case on July 28, 2009. The Debtor's assets consist primarily of ownership interests in a number of businesses, including Certified Lumber Corporation and Boro Park Home Center, lumber and hardware businesses, as well as other entities engaged in the development of real estate. One such entity is McCaren Park Mews, LLC ("McCaren"), of which the Debtor owns 50%. McCaren owns an unfinished

condominium project in Williamsburg, Brooklyn (the "McCaren Project"). Capital One holds a mortgage and security interest on McCaren's assets, securing debt in the approximate amount of $50 million (the "McCaren Debt"). The Debtor and Yitzchok Schwartz, the owner of the other half of the equity interest in McCaren, each have guaranteed the McCaren Debt.

Other creditors of the Debtor include RCG, which individually or collectively hold a security interest in the Debtor's ownership interest in various entities, including McCaren.

Prior to the filing of this chapter 11 case, Capital One commenced an action in state court to foreclose its mortgage on McCaren's assets and to recover on the guarantees. This action was removed by the Debtor to the District Court, and subsequently referred to this Court on September 3, 2009. In the adversary proceeding, the Debtor and McCaren asserted counterclaims against Capital One, including a claim that Capital One had agreed to grant the Debtor a right of first refusal to match a bona fide offer of any prospective purchaser in the event Capital One should offer to sell the McCaren Debt to a third party. Capital One stated at the hearing on this motion that it has been actively seeking to sell the McCaren Debt and has received at least one offer. The Debtor also sought injunctive relief and sought to hold Capital One in contempt for violating the automatic stay by refusing to honor this alleged right of first refusal, as well as damages for Capital One's failure to fund the completion of the McCaren Project.

On August 27, 2009, RCG filed a motion to appoint an examiner or, in the alternative, for conversion or dismissal of the Debtor's bankruptcy case. Thereafter, on November 5, 2009, after the withdrawal of the Debtor's objections, the Court ordered the appointment of an examiner.

3

On September 11, 2009, Capital One filed a motion seeking the appointment of a chapter 11 trustee in this case. A trial was scheduled on all of the issues raised by Capital One's motion for the appointment of a chapter 11 trustee and the Debtor's and McCaren's motions for contempt, for injunctive relief, and to enforce the Debtor's claimed right of first refusal.

A few days prior to the scheduled trial, the Debtor, McCaren and Capital One reported to the Court that they had settled the issues raised by Capital One's motion and the adversary proceeding, and shortly thereafter the Debtor filed a motion for approval of the settlement agreement dated as of October 22, 2009 ("Original Settlement Agreement"), pursuant to Bankruptcy Rule 9019. RCG objected to the motion.

The Original Settlement Agreement, signed by McCaren, the Debtor and Mr. Schwartz, as well as Capital One, provided that the Debtor has the right to arrange for a third party to purchase the McCaren Debt, at a discount, no later than December 21, 2009.[1] If this right was not exercised, the Settlement Agreement provided that Capital One shall have the right thereafter to sell the McCaren Debt without interference. In the event that Debtor's right was not timely exercised, and in the event that the Debtor did not obtain a temporary certificate of occupancy for the McCaren Project by December 21, 2009, the Debtor consents to the appointment of a chapter 11 trustee for the operation and disposition of the real property owned by McCaren. At the hearing on the motion to approve the Original Settlement Agreement, the parties agreed that this would be effectuated by filing a bankruptcy petition for McCaren, and causing McCaren to consent to the appointment of a chapter 11 trustee. The Debtor and McCaren do not release their

---

[1] The amount of the discount has been disclosed to the Court, and to RCG, and will be disclosed to any party in interest who agrees to keep the information confidential, but has been redacted from the electronically filed copy of the Settlement Agreement at Capital One's request pursuant to § 107(b) of the Bankruptcy Code.

4

counterclaims against Capital One unless the right to purchase the McCaren Debt is successfully exercised.

On November 18, 2009, the Court issued a decision and an order approving the Original Settlement Agreement, from which no appeal was taken.

On December 11, 2009, the Debtor filed the Motion seeking approval of an unsigned stipulation dated December 11, 2009. That Debtor then sought to approve the Proposed Stipulation, extending the closing date for the purchase of the McCaren Debt from December 21, 2009 to March 31, 2010. The stipulation also amended the default provision contained in the Original Settlement Agreement, and provided among other things, that, in the event the sale of the McCaren Debt does not timely close, or the Debtor, Schwartz, and McCaren "do not produce binding and firm writings for the sale/refinance of the Premises with verifiable proof of U.S. funds in a form acceptable to [Capital One] and tender a non-refundable deposit of $1,000,000.00 from a non debtor in U.S. funds . . . both by February 8, 2010, allowing for a time of the essence closing on or before March 31, 2010,"[2] McCaren shall file a chapter 11 petition by February 5, 2010, and that the case "shall be assigned to the same judge presiding" over the Debtor's bankruptcy case.

The Proposed Stipulation provides that McCaren shall also file an application to sell the McCaren Project by February 5, 2010, and the McCaren's failure to timely file the petition or the motion to sell the McCaren Project "shall be considered a contempt of court for the failure to comply with a court order and [McCaren, Schwartz, and the Debtor] shall be subject to sanctions

---

[2] The Proposed Stipulation defines "Premises" as 214 North 11th Street, Brooklyn, New York, which has been referred to herein as the McCaren Project.

by the Court." The Proposed Stipulation further provides that Capital one "shall be permitted to immediately submit to this Court the copies of the [p]etition and [a]pplication [to sell the McCaren Project] and the Court shall deem the [p]etition and [a]pplication filed, and order the immediate appointment of a Chapter 11 trustee for the purpose of conducting the Section 363 sale."[3] On the other hand, if the Debtor, McCaren, and Schwartz obtain and deliver the required commitments and deposit by February 8, 2010, McCaren's bankruptcy case "will be dismissed and no auction sale under Section 363 will be scheduled." The Proposed Stipulation also releases the counterclaims against Capital One.[4]

The Debtor seeks to purchase the McCaren Debt at a discount through the sale of the McCaren Project's condominium units, which is "admittedly not perhaps by the way that the parties thought of at the time [they entered into the Original Settlement Agreement or the Proposed Stipulation." (Tr.[5] 2/3/10 at 15.)

## Discussion

A bankruptcy court may approve a compromise and settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 if it "is fair, reasonable and adequately based on the facts and circumstances before the court." In re Hibbard Brown & Co., 217 B.R. 41, 45 (Bankr. S.D.N.Y. 1998). "As a general matter, settlements or compromises are favored in bankruptcy and, in fact,

---

[3] The Proposed Stipulation also provided that, by January 15, 2010, McCaren shall provide to Capital One a copy of an executed chapter 11 petition and application to sell the McCaren Project pursuant to § 363.

[4] Although this release is contained in a subdivision of the default provisions, it appears that the release is effective upon the approval of the Proposed Stipulation as consideration for the extension of the closing date, and that the claims are not waived only in the event of default. This interpretation is consistent with the Debtor's representations. (Tr. 12/16/09 at 5.)

[5] "Tr." refers to the transcript of the hearing held on the date specified.

encouraged," In re Adelphia Commc'ns Corp., 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007), "because they minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate," Inv. Exch. Group, LLC v. Colo. Capital Bank (In re 1031 Tax Group, LLC), Case No. 07-11448, Adv. Pro. No. 07-1710, 2007 WL 2455176, at *3 (Bankr. S.D.N.Y. August 23, 2007).

In determining whether a proposed settlement should be approved, a court must determine whether the settlement is in the best interests of the estate and whether it is "fair and equitable." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). The court's responsibility is to "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)).

The Second Circuit summarized the factors that a court must consider when deciding whether a settlement falls above or below the lowest point in the range of reasonableness as follows:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
>
> (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";
>
> (4) whether other parties in interest support the settlement;

        (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;

        (6) "the nature and breadth of releases to be obtained by officers and directors"; and

        (7) "the extent to which the settlement is the product of arm's length bargaining."

Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007) (alteration in original) (quoting In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

    Before applying the Rule 9019 standard, this Court must address a threshold issue: whether this Court has the ability to approve this settlement at all even if the Iridium factors weigh in favor of approval. While it is true that settlements are encouraged, Adelphia, 368 B.R. at 226, it is also true that parties cannot enter into a settlement that violates law or public policy, Se. Fed. Power Customers, Inc. v. Geren, 514 F.3d 1316, 1321 (D.C. Cir. 2008); Miller Tabak Hirsch & Co. v. Comm'r, 101 F.3d 7, 10 (2d Cir. 1996). It is well established that "[s]ettlements are void against public policy . . . if they directly contravene a state or federal statute or policy." In re Smith, 926 F.2d 1027, 1029 (11th Cir. 1991); see also Allied Erecting & Dismantling, Co. v. USX Corp., 249 F.3d 191, 196 (3d Cir. 2001); EEOC v. Astra USA, Inc., 94 F.3d 738, 744 (1st Cir. 1996).

    The Proposed Settlement cannot be approved because the default provisions conflict with the Bankruptcy Code. First, the settlement provides that, upon the filing of McCaren's bankruptcy petition, the Court shall "order the immediate appointment of a Chapter 11 trustee for the purpose of conducting the Section 363 sale" of the McCaren Project. Procedurally, this

violates Bankruptcy Code § 1104(a), which requires the bankruptcy court to appoint a chapter 11 trustee "after notice and a hearing." Other parties in interest would have the right to object, and in the event that grounds for the appointment of a trustee are not found to exist, a trustee could not be appointed. Moreover, this provision substantively violates § 1106, which sets forth the duties of a chapter 11 trustee. 11 U.S.C. § 1106. This Court cannot approve a stipulation between the parties that flies in the face of the Bankruptcy Code by limiting a chapter 11 trustee's duties and obligations in the McCaren bankruptcy case to selling the McCaren Project. As explained by the Supreme Court:

> The powers and duties of a bankruptcy trustee are extensive. Upon the commencement of a case in bankruptcy, all corporate property passes to an estate represented by the trustee. 11 U.S.C. §§ 323, 541. The trustee is "accountable for all property received," §§ 704(2), 1106(a)(1), and has the duty to maximize the value of the estate, see § 704(1); In re Washington Group, Inc., 476 F.Supp. 246, 250 (M.D.N.C. 1979), aff'd sub nom. Johnston v. Gilbert, 636 F.2d 1213 (4th Cir. 1980), cert. denied, 452 U.S. 940, 101 S.Ct. 3084, 69 L. Ed.2d 954 (1981). He is directed to investigate the debtor's financial affairs, §§ 704(4), 1106(a)(3), and is empowered to sue officers, directors, and other insiders to recover, on behalf of the estate, fraudulent or preferential transfers of the debtor's property, §§ 547(b)(4)(B), 548. Subject to court approval, he may use, sell, or lease property of the estate. § 363(b).
>
> Moreover, in reorganization, the trustee has the power to "operate the debtor's business" unless the court orders otherwise. § 1108. Even in liquidation, the court "may authorize the trustee to operate the business" for a limited period of time. § 721. In the course of operating the debtor's business, the trustee "may enter into transactions, including the sale or lease of property of the estate" without court approval. § 363(c)(1).
>
> As even this brief and incomplete list should indicate, the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor.

Commodity Futures Trading Com'n v. Weintraub, 471 U.S. 343, 353 (1985).

A chapter 11 trustee owes a fiduciary duty to the bankruptcy estate, id. at 355, and cannot be bound by an agreement between the debtor and a creditor that conflicts with the trustee's obligations under the Bankruptcy Code.  It is possible that the chapter 11 trustee would determine that the sale of the McCaren Project is not in the estate's best interests, and that, instead, developing the McCaren Project and selling the units to generate income is in the estate's best interests.  Approving the Proposed Stipulation requiring a chapter 11 trustee to sell the McCaren Project would place the chapter 11 trustee in the impossible position of deciding between violating a court order, i.e. the court-approved Proposed Stipulation, or violating his fiduciary duties.

Similarly, the Proposed Stipulation provides that if the required commitments and deposit are delivered by February 8, 2010, McCaren's bankruptcy case, which, pursuant to the stipulation must be filed by February 5, 2010, "will be dismissed and no auction sale under Section 363 will be scheduled."  Section 1112 governs dismissal of chapter 11 cases, and requires "notice and a hearing" before a chapter 11 case is dismissed.  That section also requires the court to determine whether there is "cause" to dismiss the case, and whether dismissal is in the best interests of the estate.  11 U.S.C. § 1112(b)(1).  As such, the Debtor, McCaren, Schwartz, and Capital One cannot stipulate that McCaren's case will be dismissed, thereby violating the procedural and substantive requirements mandated by § 1112.

Lastly, the Proposed Stipulation provides that McCaren's bankruptcy case will be assigned to the same judge presiding over the Debtor's case.  The parties cannot stipulate which judge will be assigned McCaren's bankruptcy case, or engage in similar "'judge shopping,' a practice which has been for the most part universally condemned."  U.S. v. Haldeman, 559 F.2d

31, 133 n.297 (D.C. Cir. 1976). While E.D.N.Y. Local Bankruptcy Rule 1073-1(b) provides that "cases involving affiliated or related debtors shall be assigned to the Judge to whom the first such case was assigned," E.D.N.Y. LBR 1073-1(b), making it likely that McCaren's case will be assigned to the same judge, there is no guarantee that such assignment will occur, see E.D.N.Y. LBR 1073-1(c).

For these reasons, the Proposed Stipulation cannot be approved because it contains numerous default provisions that violate the Bankruptcy Code. The provisions cannot simply be ignored as immaterial because they establish the form of relief available to Capital One in the event the Debtor, McCaren, or Schwartz default under the Proposed Stipulation. Moreover, it is clear that these terms are material because they are significantly more detailed, and purport to provide more control of the process to Capital One, than the default provisions contained in the Original Settlement Agreement, indicating that they were specifically renegotiated. This Court cannot strike the offensive provisions and approve the remainder of the Proposed Stipulation. It is well established that a court "should approve or disapprove a proposed agreement as it is placed before [it] and should not take it upon [itself] to modify [the agreement's] terms." Becker v. Warner Commc'ns, Inc. (In re Warner Commc'ns, Inc.), 798 F.2d 35, 37 (2d Cir. 1986) (class-action settlement); see also Reynolds v. Roberts, 202 F.3d 1303, 1312 (11th Cir. 2000) ("Long standing precedent evinces a strong public policy against judicial rewriting of consent decrees."). Given the conclusion that the Proposed Stipulation cannot be approved, the objections of RCG and Capital One are not addressed.

<u>Conclusion</u>

For all these reasons, the Motion is denied and the Proposed Stipulation is not approved.

A separate order will issue.



**Dated: Brooklyn, New York**
**February 5, 2010**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**